1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10
11

NORBERT BASIL MacLEAN III,

12

Plaintiff,

vs.

13

14

U.S. DEPARTMENT OF THE ARMY;
U.S. DEPARTMENT OF THE AIR

15

FORCE; FRANCIS J. HARVEY, in his
official capacity as Secretary of the Army;

16

and U.S. DEPARTMENT OF DEFENSE,

17

Defendants.

CASE NO. 05-CV-1519
WQH(CAB)

**ORDER ON CROSS-MOTIONS
FOR SUMMARY JUDGMENT**

(Docs. # 27, 36, 45, 54)

18
19

Before the Court are Motions for Summary Judgment filed by Plaintiff (Doc. # 45), as

20

well as all Defendants (Docs. # 27, 36), in this action brought pursuant to the Freedom of

21

Information Act ("FOIA"), 5 U.S.C. § 552.

22

**I.      Background**

23

In 1992, while Plaintiff was serving in the Navy, the Navy convened a general court-

24

martial against him for passing bad checks.  *See MacLean v. Dep't of Def.*, Case No.

25

04cv2425-IEG(JFS) (S.D. Cal.), June 6, 2005 Order Granting Defendants' Motion for

26

Summary Judgment and Denying Plaintiff's Cross-Motion for Summary Judgment ("*June 6,*

27

*2005 Order*"), at 2.  Plaintiff pleaded guilty to multiple specifications of writing bad checks,

28

was acquitted on other charges, and was dishonorably discharged. *See id.*; *see also MacLean*

*v. U.S.*, 454 F.3d 1334, 1335 (Fed. Cir. 2006).  According to Plaintiff, during this 1992 case, he "was the victim of illegal military subpoenas designed to skirt the protections afforded by federal privacy laws.  Specifically, the U.S. Navy issued at least one dozen illegal subpoenas on civilians, without notice to [Plaintiff] MacLean, that violated MacLean's rights under the federal Right to Financial Privacy Act."  (Pl.'s Mem. Supp. Pl.'s Mot. Summ. J. at 1.)  These subpoenas were "illegal" because they were issued prior to the convening of his general court-martial.  *See Flowers v. First Hawaiian Bank*, 295 F.3d 966, 973 (9th Cir. 2002) (holding that military subpoena power does not exist prior to the convening of a general court-martial). Defendants do not dispute that those subpoenas were issued prior to the convening of his court-martial, and hence were unauthorized.  (Defs.' Mem. Supp. Mot. Summ. J. at 2 n.5.)  Over the past several years, Plaintiff has sought unsuccessfully to attack collaterally his conviction.[1]

In 2004, Plaintiff submitted FOIA requests to the Navy Office of Judge Advocate General ("Navy OJAG") and the Department of Defense ("DoD") seeking "any and all documents that refer, reflect and/or relate to any investigations conducted by the JAG Corps IG in the years 2003 and 2004 regarding Mr. MacLean's case and allegations of illegal subpoenas that were issued in May, June and July 1992 prior to the convening of Mr. MacLean's general court-martial on August 6, 1992."  *June 6, 2005 Order* at 2.  Unsatisfied with the responses he received to this FOIA request, Plaintiff filed *MacLean v. Dep't of Defense*, Case No. 04cv2425-IEG(JFS) (S.D. Cal.), asking the Court (Gonzalez, C.J.) to order production of all requested documents.

On May 10, 2005, Chief Judge Gonzalez heard oral arguments on the parties' cross-motions for summary judgment.  Part of the arguments touched on whether Plaintiff could establish a public interest in disclosure of documents related to the unauthorized issuance of subpoenas.  Defense counsel stated: "All we have is an allegation of this one incident [i.e., Plaintiff's court-martial] in which there were subpoenas that were issued prior to the convening

---

[1] *See MacLean v. U.S.*, 454 F.3d 1334 (Fed. Cir. 2006); *MacLean v. U.S.*, 2002 CCA LEXIS 182 (N-M.C.C.A. 2002), *pet. denied*, 2003 CCA LEXIS 290 (N-M.C.C.A. 2003), *appeal denied*, 59 M.J. 340, 2004 CAAF LEXIS 167 (C.A.A.F. 2004), *appeal denied*, 62 M.J. 230, 2005 CAAF LEXIS 1131 (C.A.A.F. 2005); *MacLean v. U.S.*, Case No. 02cv2250-K(AJB) (S.D. Cal.).

of the court-martial, and there has been no dispute all along by the Navy that the issuance of the subpoenas before the convening of the court-martial was improper." (Pl.'s January 27, 2006 Req. for Judicial Notice, Ex. 1 (May 10, 2005 hearing transcript), at 6.) Defense counsel further stated:

> I mean, is there any practice that [Plaintiff] can show that there were improper subpoenas that were issued on a widespread basis? We don't have any indication of that whatsoever. So, again, we have a situation here where not only is this a long time ago, not only is it something that was a single incident, but another thing to adhere to is that this matter was investigated by the Navy.... And again, I would say that it's [Plaintiff's] trying to create the public interest as opposed to there really being a public interest in the sense of the Freedom of Information Act.

(Id. at 9.) The Court then asked Plaintiff's counsel, "Do you agree with the government that this was an isolated incident?" (Id. at 26.) Plaintiff's counsel responded:

> We're disadvantaged here because we only know what the government has told us.... So, no, we don't believe it's an isolated incident. We believe that were we to do FOIA. requests to every branch of the military, we could probably discover a lot of incidents of illegal subpoenas being issued.... And in terms of the public interest, ... this case is not just sort of about Mr. MacLean's personal vendetta. This is really about the public right to know information about what we consider to be serious government misconduct. And it's not an isolated incident.

(Id. at 26-27, 33.) In rebuttal, the government disputed this, declaring that "[Plaintiff's] claim about other instances of misconduct is totally speculative." (Id. at 45.) On June 6, 2005, Chief Judge Gonzalez granted the government's motion for summary judgment, basing her ruling, in part, on a finding that the implicated privacy interests outweighed the public interest in disclosure. That ruling has been appealed, and the case is currently pending before the Ninth Circuit.

After the above-quoted exchanges before Chief Judge Gonzalez, Plaintiff conducted research and "discovered separate incidents involving other branches of the U.S. military issuing illegal subpoenas upon civilians." (First Amended Complaint ¶ 10.)

On May 23, 2005, Plaintiff submitted an FOIA request to the Army, addressing it to both the OJAG Criminal Law Division, and the Army Standards of Conduct Office ("SOCO"). (Quinn Decl., Ex. A) Plaintiff's May 23, 2005 FOIA request stated:

> I hereby request pursuant to Freedom of Information Act ('FOIA'), ... to be provided the following information on the below listed cases involving the issuance of illegal military subpoenas to civilians: (1) any and all professional

- 3 -

responsibility investigations into the Army judge advocates and/or agents of the U.S. Army who issued the illegal subpoenas to civilians; (2) any and all misconduct investigations by the Army Judge Advocate General and/or Army Inspector General into the Army judge advocates and/or agents of the U.S. Army who issued the illegal subpoenas to civilians; (3) any and all ethics investigations into the Army judge advocates and/or agents of the U.S. Army who issued the illegal subpoenas to civilians; and (4) any and all formal and/or informal disciplinary action taken against the Army judge advocates and/or agents of the U.S. Army who issued the illegal subpoenas to civilians:

  1) Case of Sergeant Major Marshall Flowers [U.S. Army judge advocates in Hawaii issued illegal subpoenas to civilians for use at a Uniform Code of Military Justice ('UCMJ') article 32 hearing];
  2) Case of Specialist Ricky M. Johnson [U.S. Army judge advocate in Germany caused the German government to issue an illegal subpoena for a 'UCMJ article 32' hearing of a German civilian]; and
  3) Case of Specialist La-Dell V. Wooten [U.S. Army judge advocates in Germany issued illegal subpoenas for an UCMJ article 32 hearing to civilians in Texas and Germany]

(*Id.*)

On May 31, 2005, the Army OJAG denied Plaintiff's request, characterizing Plaintiff's request as one seeking records involving allegations of professional misconduct by Army attorneys, and stating that "as a matter of policy to protect the privacy interests of Army personnel, this office does not confirm or deny the existence of the type of records that would respond to your request." (*Id.*, Ex. B.) The Army's response further indicated that even if the records Plaintiff sought existed,

they would be exempt from mandatory release under FOIA exemptions 5, 6 and 7(C).... Information is withheld pursuant to FOIA exemption 5 because it is predecisional and deliberative information. Information is withheld pursuant to FOIA exemptions 6 and 7(C) because release of the information would cause a clearly unwarranted invasion of personal privacy for the person concerned. Furthermore, your request for information of 'misconduct investigations by the.... Army Inspector General into the Army judge advocates and/or agents of the U.S. Army who issued the illegal subpoenas to civilians....' encompasses attorney professional responsibility information which could be held by the Inspector General, and is denied for the same reasons. This action constitutes a denial of your request....

(*Id.*)

By letter dated June 6, 2005, Plaintiff appealed the denial. (*Id.*, Ex. C.) On September 19, 2005, the Army denied Plaintiff's appeal, finding that the refusal to confirm or deny the existence of documents responsive to Plaintiff's FOIA request had been proper under FOIA Exemption 6 (i.e., 5 U.S.C. § 552(b)(6)). (*Id.*, Ex. D.) The Army stated that the professional

responsibility investigation records Plaintiff sought were analogous to law enforcement files, and that "an attorney's privacy interest outweighs the public's interest in knowing whether the individual was the subject of any type of misconduct or ethics investigation because such knowledge would shed little light on Government operations." (*Id.*, Ex. D.)

On May 23, 2005, Plaintiff also submitted an FOIA request to the Air Force, identical in substance to the above-quoted Army request, except he requested investigation documents related to the following three cases:

1) Case of Master Sergeant Martha Lawson, U.S. Air Force [U.S. Air Force judge advocates at Andrews Air Force Base, Maryland issued illegal subpoenas to civilians for use at a Uniform Code of Military Justice ('UCMJ') article 32 hearing];
2) Case of Staff Sergeant Marcus William, U.S. Air Force [U.S. Air Force judge advocates at Maxwell Air Force Base, Alabama issued illegal subpoenas to civilians for use at a UCMJ article 32 hearing]; and
3) Major Gregory Russell, U.S. Air Force [U.S. Air Force judge advocates at the U.S. Air Force Academy, Colorado Springs, Colorado issued illegal subpoenas to civilians for use at a UCMJ article 32 hearing].

(Espinal Decl., Ex. A.)   On May 25, 2005, the Air Force sent a letter to Plaintiff acknowledging the receipt of the FOIA request and indicating that the request was being processed. (*Id.*, Ex. B.) On June 22, 2005, the Air Force sent Plaintiff another letter stating that the processing of his FOIA request continued. (*Id.*, Ex. C.) On August 15, 2005 and August 23, 2005 (after Plaintiff initiated the current action), two different Air Force departments sent Plaintiff letters indicating that no responsive records were located. (*Id.*, Ex. D & F.) On March 21, 2006, the Air Force sent Plaintiff a letter informing him that during a subsequent search of its records, 77 pages of responsive documents were found. (*Id.*, Ex. G.) The letter further indicated that Plaintiff would receive a redacted version of the documents, due to "Exemptions 2, 5, 6, and 7(C) of the FOIA," along with a "*Vaughn* index," which is a chart containing a description of the documents, summary of the withheld information and the claimed FOIA exemptions. (*Id.*; Peterson Decl. I, Ex. B.) Finally, on January 11, 2007, the Air Force released 10 of the previously released 77 documents, with fewer redactions, along with a revised *Vaughn* index. (Peterson Decl. II, Ex. A & B.)

On July 25, 2005, Plaintiff filed the instant lawsuit, seeking judicial review of the Defendants' responses (or lack thereof) to his FOIA requests. On January 3, 2006, Plaintiff

1  filed his First Amend Complaint ("FAC"), which consists of four Counts.  Counts One (against

2  Army) and Two (against Air Force) seek a declaration that Plaintiff was denied his right to a

3  timely determination of his FOIA requests.  Count Three (against Army, Air Force and DoD)

4  seeks injunctive relief for the failure of the agencies to provide the requested documents.

5  Count Four seeks to enjoin the Army from its alleged policy to "not confirm or deny the

6  existence" of requested FOIA documents (i.e., a so-called "Glomar" response).[2]  On January

7  27, 2006, Plaintiff moved for a preliminary injunction as to Count Four only.  (Doc. # 20.)

8  After briefing and a hearing, the Court denied the Motion for Preliminary Injunction on March

9  23, 2006, holding, *inter alia*, that Plaintiff had demonstrated a low probability of success on

10  the merits.  (Doc. # 32.)

11       On March 6, 2006, Defendants filed a Motion for Summary Judgment as to all the

12  claims against all Defendants in the FAC, with the exception of Plaintiff's claim against the

13  Air Force in Count Three.  (Doc. # 27.)  On June 5, 2006, the Air Force filed a Motion for

14  Summary Judgment as to the claim against it in Count Three.  (Doc. # 37.)

15       On December 1, 2006, Plaintiff filed his own Motion for Summary Judgment (Doc. #

16  45), as well as an opposition to Defendants' Motions (Doc. # 46).  In his Opposition, Plaintiff

17  narrowed the issues by stating he "does not challenge the adequacy of the search performed

18  by the DoD and hereby consents to summary adjudication or dismissal of the DoD as a party";

19  he "voluntarily dismisses Secretary of the Army Francis J. Harvey from this action because he

20  is not a necessary party for the Plaintiff to secure an adequate remedy"; and, he "is no longer

21  seeking the injunction sought in Count IV."  (Pl.'s Mem. Opp'n Defs.' Mots. Summ. J. at 1

22  n.1.)[3]  In light of this, all claims against Defendants DoD and Secretary Harvey will be

23  dismissed, as well as Plaintiff's claim for injunctive relief in Count Four.  Thus, the remaining

24  claims are those contained in Counts One (against Army) and Two (against Air Force), each

25

26       [2]  The Glomar response was first judicially recognized in *Phillippi v. CIA*, 546 F.2d
    1009, 1013 (D.C. Cir. 1976), when the Central Intelligence Agency refused to confirm or deny
27  any connection with the underwater research vessel "Hughes Glomar Explorer."

28       [3]  On February 9, 2007, all parties filed a "Joint Motion to Dismiss Defendants U.S.
    Department of  Defense and Francis J. Harvey, Secretary of the Army."  (Doc. # 54.)

1    seeking declaratory relief, and those contained in Count Three against Army and Air Force,

2    seeking injunctive relief.

3          On January 16, 2007, Defendants filed a reply brief and an opposition to Plaintiff's

4    Motion.  On February 5, 2007, Plaintiff filed a reply brief.  On February 12, 2007, the Court

5    heard oral arguments.

6    **II.    Discussion**

7          **A.    Legal Standard**

8          "Summary judgment is the procedural vehicle by which nearly all FOIA cases are

9    resolved."  *Nat'l Res. Def. Council v. Dep't of Def.*, 388 F. Supp. 2d 1086, 1094 (C.D. Cal.

10   2005) (quoting *Mace v. EEOC*, 37 F. Supp. 2d 1144, 1146 (E.D. Miss. 1999)).  However,

11   "[u]nlike the typical summary judgment analysis, in a FOIA case, we do not ask whether there

12   is a genuine issue of material fact, because the facts are rarely in dispute."  *Minier v. CIA*, 88

13   F.3d 796, 800 (9th Cir. 1996); *cf. Fiduccia v. DOJ*, 185 F.3d 1035, 1040 (9th Cir. 1999)

14   ("Though this is review of a summary judgment, our review in a FOIA summary judgment

15   case is not simply *de novo*, nor do we ask whether there is a genuine issue of fact in most

16   cases.  Instead, in a FOIA case, we first determine whether the district judge had an adequate

17   factual basis for decision, and if not, remand.").

18         "FOIA gives individuals a judicially-enforceable right of access to government agency

19   documents."  *Lion Raisins v. Dep't of Agric.*, 354 F.3d 1072, 1079 (9th Cir. 2004) (citing 5

20   U.S.C. § 552); *see also, e.g., Minier*, 88 F.3d at 800 ("FOIA entitles private citizens to access

21   government records.").  The FOIA provides, *inter alia*, that: "[E]ach agency, upon any request

22   for records which (i) reasonably describes such records and (ii) is made in accordance with

23   published rules stating the time, place, fees (if any), and procedures to be followed, shall make

24   the records promptly available to any person."  5 U.S.C. § 552(a)(3)(A).

25         "The Supreme Court has interpreted the disclosure provisions of FOIA broadly, noting

26   that the act was animated by a 'philosophy of full agency disclosure.'"  *Lion Raisins*, 354 F.3d

27   at 1079 (citing *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989); *Dep't of the*

28   *Air Force v. Rose*, 425 U.S. 352, 361 (1976) ("disclosure, not secrecy, is the dominant

1   objective of the Act")).  "FOIA contains nine exemptions, however, which a government

2   agency may invoke to protect certain documents from public disclosure." *Minier*, 88 F.3d at

3   800 (citing 5 U.S.C. § 552(b)).  "Unlike the disclosure provisions of FOIA, its statutory

4   exemptions 'must be narrowly construed.'" *Lion Raisins*, 354 F.3d at 1079 (quoting *John Doe*

5   *Agency*, 493 U.S. at 152).  "Where the government withholds documents pursuant to one of

6   the enumerated exemptions of FOIA, 'the burden is on the agency to sustain its action.'" *Id.*

7   (quoting 5 U.S.C. § 552(a)(4)(B)).  "An agency's refusal to disclose information is subject to

8   *de novo* review by a district court."  *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir.

9   1993) (citing 5 U.S.C. § 552(a)(4)(B)).  In addition, the governmental agency has the burden

10  of proving that it has "conducted a search reasonably calculated to uncover all relevant

11  documents."  *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983); *see also*

12  *Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir.1985).

13        The peculiar nature of an FOIA dispute poses unique problems.  As the Ninth Circuit

14  has observed:

15        In a typical FOIA case, the plaintiff must argue that a government agency has
          improperly withheld requested documents, even though only the agency knows
16        their actual content.  This lack of knowledge by the party seeking disclosure
          seriously distorts the traditional adversarial process.  To address this problem,
17        courts have created methods to be sure the requesting party and the deciding
          judge have sufficient information upon which to determine whether the
18        government agency properly withheld the requested documents.  These methods
          include creation of a 'Vaughn index' (which identifies each document withheld,
19        the statutory exemption claimed, and an explanation of how disclosure would
          damage the interest protected), and the submission of some other form of
20        accounting for the withheld documents, such as an affidavit.

21  *Schiffer v. FBI*, 78 F.3d 1405, 1408-09 (9th Cir. 1996) (quotation and citations omitted).

22  "Courts are permitted to rule on summary judgment in FOIA cases solely on the basis of

23  government affidavits describing the documents sought."  *Lion Raisins*, 354 F.3d at 1082

24  (citation omitted).  "Because the court and the plaintiff do not have the opportunity to view the

25  documents themselves, the [government's] submission must be 'detailed enough for the district

26  court to make a *de novo* assessment of the government's claim of exemption.'"  *Id.* (quoting

27  *Maricopa Audubon Soc'y v. U.S. Forest Serv.*, 108 F.3d 1089, 1092 (9th Cir. 1997)).

28        **B.      Counts One and Two - Declaratory Relief**

In Counts One and Two of the FAC, Plaintiff asks the Court to "[d]eclare ... defendants' Army and Air Force refusal and failure to timely make a substantive determination on plaintiff's FOIA requests and appeal to be arbitrary, capricious and unlawful under FOIA." (FAC at 8, 10.)  Defendants seek summary judgment on the grounds that no such cause of action exists under the FOIA.  In the summary judgment briefing, Plaintiff does not respond to this argument, instead focusing all of his arguments on the Count Three claims.

The FOIA provides that if an agency does not respond to a FOIA request within the time periods set out in the FOIA, *see* 5 U.S.C. § 552(a)(6), the requester may deem his administrative remedies exhausted and proceed to court to seek an order compelling the agency to produce the requested records, *see* 5 U.S.C. §§ 552(a)(6)(C)(i) & 552(a)(4)(B). *See Oglesby v. Dep't of Army*, 920 F.2d 57, 63-64 (D.C. Cir. 1990) ("The ... constructive exhaustion under 5 U.S.C. § 552(a)(6)(C) allows immediate recourse to the courts to compel the agency's response to a FOIA request.").  Here, Plaintiff availed himself of this remedy by filing this action.  Plaintiff has pointed to no case--and the Court is aware of none--indicating that a requester has an additional declaratory remedy for an agency's failure to timely respond to an FOIA request.  *Cf. Edmonds Inst. v. Dep't of Interior*, 383 F. Supp. 2d 105, 111-12 (D.D.C. 2005) (rejecting plaintiff's claim that it was entitled to a declaratory judgment that the defendant agency acted contrary to law when the agency failed to respond to plaintiff's FOIA requests within the time required by statute).  Plaintiff has failed to show (or even to argue) that the injunctive relief available in 5 U.S.C. § 552(a)(4)(B), and requested by Count Three of his FAC, would not be an adequate remedy.  Therefore, as to the claims in Counts One and Two of the FAC, the Court finds that summary judgment in favor of Defendants is appropriate.

## C.    Count Three

In Count Three of the FAC, Plaintiff asks the Court to enjoin Army and Air Force from continuing to withhold any documents which are responsive to his FOIA request.  Each agency claims that the documents were properly withheld pursuant to FOIA Exemptions 6 and/or

7(C).[4]  These exemptions provide as follows:

> (b) This section does not apply to matters that are--
> ...
> (6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;
> (7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy....

5 U.S.C. § 552(b).

## 1.    Exemption 7(C)

Exemption 7(C) shields from public disclosure information about individuals where: (1) the "information [was] compiled for law enforcement purposes," and (2) the disclosure of the information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

## a.    "Law Enforcement Purposes"[5]

The first question in determining the applicability of Exemption 7(C) is whether "the withheld record was compiled for law enforcement purposes." *See Rosenfeld v. Dep't. of Justice*, 57 F.3d 803, 808 (9th Cir. 1995). "The term 'law enforcement purpose' has been construed to require an examination of the agency itself to determine whether the agency may exercise a law enforcement function." *Church of Scientology of Cal. v. Dep't of Army*, 611 F.2d 738, 748 (9th Cir. 1979) (citation omitted). "[A]n agency which has a 'mixed' function, encompassing both administrative and law enforcement functions, must demonstrate that it had a purpose falling within its sphere of enforcement authority in compiling the particular document." *Id.* (citation omitted). "In determining whether a 'law enforcement purpose' is

---

[4]  Defendants contend that two other exemptions, 5 U.S.C. §§ 552(b)(2) & 552(b)(5), are likewise applicable to certain of the requested material. Because the Court's rulings concerning Exemptions 7(C) and 6 resolve the entire case, as discussed *infra*, the Court declines to decide whether Exemptions 2 and/or 5 might also protect certain information from disclosure.

[5]  Both the order denying the preliminary injunction motion in this case, as well as Judge Gonzalez's order granting summary judgment in the related case, include a finding that the requested records were "compiled for law enforcement purposes." (Order Denying Mot. Prelim. Inj. at 15; *June 6, 2005 Order* at 14-15.) However, Plaintiff has not contested the issue until now. Therefore, the Court now reconsiders whether the requested records were "compiled for law enforcement purposes."

present, courts must look to the purpose behind the compilation of the document. The agency must show that the files were compiled for adjudicative or enforcement purposes." *Id.* (quotation omitted).

Here, with respect to the six named cases, Plaintiff sought information on "professional responsibility investigations into" those "who issued the illegal subpoenas to civilians"; "misconduct investigations" into those "who issued the illegal subpoenas to civilians"; "ethics investigations into" those "who issued the illegal subpoenas to civilians"; and "formal and/or informal disciplinary action taken against" those "who issued the illegal subpoenas to civilians." (Quinn Decl., Ex. A; Espinal Decl., Ex. A.)

In supporting its claim that this requested information, if it exists, was compiled for law enforcement purposes, the Army provides an affidavit and an Army Regulation which details the Army's professional responsibility program. (Quinn Decl.¶ 7, Ex. K (Army Regulation 27-1).) The Army's proffered affidavit states: "[I]nvestigations are initiated in response to specific allegations of misconduct which, if true, could result in sanctions against the attorney. Potential sanctions include reprimands, suspension from duties, report of the conduct to state licensing authorities, or, if serious enough, in criminal charges." (Quinn Decl. ¶ 8(a), Ex. K at 4-5.) The Army also points to three provisions of the Uniform Code of Military Justice ("UCMJ"), 10 U.S.C. § 892 (any person subject to the UCMJ who "is derelict in the performance of his duties[] shall be punished as a court-martial may direct"); § 907 (any person subject to the UCMJ "who, with intent to deceive, signs any false record, return, regulation, order, or other official document, knowing it to be false, or makes any other false official statement knowing it to be false, shall be punished as a court-martial may direct"); and, § 934 (catch-all provision, outlawing "all disorders and neglects to the prejudice of good order and discipline in the armed forces, all conduct of a nature to bring discredit upon the armed forces, and crimes and offenses not capital, of which persons subject to this chapter may be guilty").[6] The Air Force proffered similar materials, and also referenced the UCMJ, in support

---

[6] The Army cites the catch-all provision, 10 U.S.C. § 934, as being relevant here for a potential charge of obstructing justice. (Defs.' Mem. Supp. Mot. Summ. J. at 17.)

1    of its contention that the withheld information was compiled for law enforcement purposes.

2    (Peterson Decl. I ¶ 15, Exs. D, E, F; McGowan Decl. ¶ 2.)[7]

3         Plaintiff takes issue with this evidence as too vague.  (Pl.'s Reply Mem. at 3.)  In

4    support, Plaintiff relies upon *Patterson v. IRS*, 56 F.3d 832 (7th Cir. 1995), wherein the

5    plaintiff's FOIA request was for "[a]ll Investigative/Inspections Reports dated between April

6    1, 1989 and July 30, 1990.  The subject matter of these reports would include any matter

7    relating and/or involving the undersigned."  *Id.* at 834.  The Seventh Circuit held that the

8    agency's declaration in support of its Exemption 7 claim was too vague because, "not only did

9    the ... Declaration fail to elaborate on the underlying offense, it failed to even recite the statutes

10   pursuant to which the investigation was undertaken."  *Id.* at 837 (quotation omitted).  By

11   contrast, here, Plaintiff's own FOIA requests specifically define "the underlying offense": the

12   issuance of "illegal subpoenas."  Any files relating to investigations of offenses *other than*

13   "illegal subpoenas" would be outside the scope of Plaintiff's FOIA request.  Also, unlike in

14   *Patterson*, here Defendants' evidence specifically names the statutes and regulations which

15   would be implicated by an investigation of a prosecutor who issued an unauthorized subpoena.

16   Of course, Defendants' evidence is careful not to confirm or deny the existence of specific

17   investigations in the cases cited by Plaintiff's FOIA requests, but an agency "need not specify

18   its objections [to disclosure] in such detail as to compromise the secrecy of the information."

19   *Lewis v. IRS*, 823 F.2d 375, 378 (9th Cir. 1987) (quoting *Church of Scientology*, 611 F.2d at

20   742-43).  This issue is discussed further with respect to the Army's use of the Glomar response

21   and the Air Force's *Vaughn* index, *see infra*.

22   _____

23       [7]  For example, the Peterson Declaration provides, in part:
         Military lawyers investigate professional responsibility complaints.  Subjects of
24       these complaints are afforded the right to counsel and are provided with an
         advisement of their rights pursuant to Article 31 of the Uniform Code of
25       Military Justice ('UCMJ'), 10 U.S.C. § 831.  Virtually any case in which a
         complaint of professional misconduct is substantiated could subject the military
26       attorney to discipline for the offense of dereliction of duty, prohibited under
         Article 92, UCMJ, 10 U.S.C. § 892.  Even without a violation of criminal law,
27       a substantiated ethics complaint could result in a number of potential
         administrative sanctions, including revocation of the attorney's certification as
28       a judge advocate and the ability to practice before Air Force Courts-Martial.  10
         U.S.C. §§ 806, 827.
     Peterson Decl. I ¶ 15 (citations omitted).

In making the determination of whether files are compiled "for law enforcement purposes," courts make a critical distinction between an investigation of a particular employee for a particular violation of law and the "customary surveillance of the performance of duties by government employees." *Jefferson v. Dep't of Justice*, 284 F.3d 172, 177 (D.C. Cir. 2002) ("[I]f the investigation is for a possible violation of law, then the inquiry is for law enforcement purposes, as distinct from customary surveillance of the performance of duties by government employees."); *see also Sakamoto v. Envtl. Prot. Agency*, 443 F. Supp. 2d 1182, 1194 (N.D. Cal. 2006) (same).  As the Ninth Circuit has stated: "[g]enerally, files such as 'internal audits' compiled simply to determine whether an agency's internal operations comport with statute or regulation do not qualify [as being compiled for 'law enforcement purposes']," while an "investigation involv[ing] the enforcement of any statute or regulation within the authority of the [agency]" does qualify.  *Church of Scientology*, 611 F.2d at 748 (citations omitted); *see also Stern v. FBI*, 737 F.2d 84, 89 (D.C. Cir. 1984) ("[A]n agency's investigation of its own employees is for 'law enforcement purposes' only if it focuses 'directly on specifically alleged illegal acts, illegal acts of particular identified officials, acts which could, if proved, result in civil or criminal sanctions.").  Defendants' evidence shows that the requested information involves "investigations ... initiated in response to specific allegations of misconduct which, if true, could result in sanctions against the attorney." (Quinn Decl. ¶ 8(a); *see also* Quinn Decl., Ex. K at 4-5; Peterson Decl. I ¶ 15, Exs. D, E, F; McGowan Decl. ¶ 2.)  This evidence is sufficient to show that the requested investigation-related documents did not arise from an "internal audit" or "customary surveillance," but instead arose from "specifically alleged illegal acts."  *See Kimberlin v. Dep't of Justice*, 139 F.3d 944, 947-48 (D.C. Cir. 1998) ("The [Office of Professional Responsibility ('OPR')] investigation here at issue was conducted in response to and focused upon a specific, potentially illegal release of information by a particular, identified official.... The investigation was not aiming generally, as was the investigation in *Rural Housing* for example, 'to insure that the agency's employees are acting in accordance with statutory mandate and the agency's own regulations.' We conclude, therefore, that the Government compiled the information in the OPR file for law

1    enforcement purposes.") (quoting *Rural Housing Alliance v. Dep't of Agric.*, 498 F.2d 73, 81

2    (D.C. Cir. 1974)); *Mueller v. Dep't of Air Force*, 63 F. Supp. 2d 738, 742-43 (E.D. Va. 1999)

3    ("documents ... prepared in connection with an investigation of allegations of prosecutorial

4    misconduct" "fit squarely within th[e] definition" of being compiled for "law enforcement

5    purposes"); *Ligorner v. Reno*, 2 F. Supp. 2d 400, 404-05 (S.D.N.Y. 1998) (holding that a

6    document related to a Department of Justice investigation of alleged misconduct by

7    prosecutors was compiled for "law enforcement purposes").  Therefore, the Court finds that

8    the information at issue was "compiled for law enforcement purposes," within the meaning of

9    Exemption 7(C).

10                          **b.      Balancing**

11          The second determination for the applicability of Exemption 7(C) is whether the

12   disclosure of the requested information "could reasonably be expected to constitute an

13   unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  In making this

14   determination, "[t]he Court must balance the employees' privacy interests against the public

15   interest in the disclosure of the information."  *Sakamoto v. Envtl. Prot. Agency*, 443 F. Supp.

16   2d 1182, 1196 (N.D. Cal. 2006) (citing *Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S.

17   487, 495-96 (1994)).  As the Supreme Court has stated: "[I]n evaluating whether a request for

18   information lies within the scope of a FOIA exemption ... that bars disclosure when it would

19   amount to an invasion of privacy that is to some degree 'unwarranted,' 'a court must balance

20   the public interest in disclosure against the interest Congress intended the [e]xemption to

21   protect.'"  *Dep't of Def.*, 510 U.S. at 495 (quoting *Dep't of Justice v. Reporters Comm. For

22   Freedom of Press*, 489 U.S. 749, 776 (1989)).  As relevant to this case, the "privacy" interest

23   Congress intended the exemption to protect is "the individual interest in avoiding disclosure

24   of personal matters."  *Dep't of Justice*, 489 U.S. at 762.

25          "A government employee generally has a privacy interest in any file that reports on an

26   investigation that could lead to the employee's discipline or censure."  *Hunt v. FBI*, 972 F.2d

27   286, 288 (9th Cir. 1992) (citation omitted); *see also Beck v. Dep't of Justice*, 997 F.2d 1489,

28   1491 (D.C. Cir. 1993) (DEA agents had an "obvious interest in the continued confidentiality

of their personnel records"); *cf. Massey v. FBI*, 3 F.3d 620, 624 (2d Cir. 1993) ("individuals, including government employees and officials, have privacy interests in the dissemination of their names").

This privacy interest exists even when some portion of the requested information is or has been available to the public: "[T]he fact that an event is not wholly 'private' does not mean that an individual has no interest in limiting disclosure or dissemination of the information." *Reporters Comm.*, 489 U.S. at 770 (holding that although "events summarized in a [F.B.I.] rap sheet have been previously disclosed to the public," Exemption 7(C) nonetheless shielded its disclosure) (citation omitted); *see also Kimberlin v. Dep't of Justice*, 139 F.3d 944, 949 (D.C. Cir. 1998) (holding that despite attorney's statement to the press indicating "who he is, what he was accused of, and that he received a relatively mild sanction," the attorney "still has a privacy interest, however, in avoiding disclosure of the details of the investigation, of his misconduct, and of his punishment-and perhaps, too, an interest in preventing hitherto speculative press reports of his misconduct from receiving authoritative confirmation from an official source") (citing *Bast v. Dep't of Justice*, 665 F.2d 1251, 1255 (D.C. Cir. 1981)); *Massey v. FBI*, 3 F.3d 620, 624 (2d Cir. 1993) ("Persons can retain strong privacy interests in government documents containing information about them even where the information may have been public at one time.") (citing *Reporters Comm.*, 489 U.S. at 762-63).

Moreover, "lower level officials ... generally have a stronger interest in personal privacy than do senior officials." *Dobronski v. FCC*, 17 F.3d 275, 280 (9th Cir. 1994). Defendants have presented evidence that the officials responsible for issuing the subpoenas in the six cases at issue were "junior officials serving in a position which is typically one of the first jobs in which a junior judge advocate serves." (Sheeran Decl. II ¶ 7; *see also* Peterson Decl. I ¶ 18.)

Plaintiff argues that the privacy of the prosecutors who issued the premature subpoenas would not be implicated because Plaintiff framed his FOIA request using the names of the targets of the military investigation, rather than the names of the prosecutors who issued the subpoenas. He then posits that the subpoenas might have been issued by someone other than the prosecutor of record in each military investigation. (Pl.'s Mem. Opp'n Defs.' Mot. Summ.

J. at 12.)  Defendants respond that the names of the individuals responsible for issuing the subpoenas in each case is available through public records.  *See Flowers v. First Hawaiian Bank*, 295 F.3d 966, 970 (9th Cir. 2002) (identifying the judge advocate who issued the unauthorized subpoena); *U.S. v. Johnson*, 53 M.J. 459, 460 (C.A.A.F. 2000) ("trial counsel in the case at bar obtained a 'subpoena'..."); *Russell v. Dep't of Air Force*, 915 F. Supp. 1108, 1113-14 (D. Colo. 1996) (identifying the individual who requested the financial records at issue); *United States v. Wooten*, 34 M.J. 141, 143 (C.M.A. 1992) ("subpoenas issued by trial counsel"); Peterson Decl. II ¶ 6 ("I have reviewed these cases and found that the Judge Advocates and/or Air Force agents named in these cases are clearly identifiable in federal district court (*Russell*) or Air Force Courts-Martial Records of Trial (*Lawson*, *Williams*)."); Sheeran Decl. I ¶ 7 (names of trial counsel appear in the record); Chapman Decl. ¶ 4 (names of trial counsel are not redacted from court-martial transcripts); Quinn Decl. ¶ 13 (facts contained within the investigation file would identify the subject of the investigation).  In short, Defendants have adequately shown that Plaintiff's requests are, in essence, "by name" requests of the individuals involved in the issuance of the subpoenas, thus implicating their privacy interests.

"Where the privacy concerns addressed by Exemption 7(C) are present, the exemption requires the persons requesting the information to establish a sufficient reason for the disclosure."  *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004).  In his FAC, Plaintiff alleges the public interest as follows:

> **The requested documents relate to the U.S. military issuing illegal subpoenas upon *civilian* citizens, which threaten jail time, a fine, and warrant of attachment if the *civilian* fails to comply when in fact no court-martial convening order existed when the illegal subpoenas were issued.** Further, the FOIA requests aim to bring to light the unsettling pattern and practice of governmental misconduct in issuing illegal subpoenas upon civilians; and an abuse of powers by governmental employees working in their official capacities.  Thus the public has a strong interest in learning of the U.S. military issuing illegal subpoenas upon civilians and the actions the military departments took after learning of the alleged misconduct.

(FAC ¶ 9 (emphasis in original).)  Plaintiff's Motion for Summary Judgment further argues:

> [T]he public has an interest in ensuring that its members of the military receive due-process protection in court-martial proceedings.  Financial institutions also are interested in this issue because of the significant potential for liability to their

customers due to improperly responding to one of these subpoenas.  Moreover, the public has an interest in ensuring that once the Army is aware of these illegal subpoenas, it takes appropriate action to correct the abuses.

Mem. Supp. Mot. Summ. J. at 11.)  Plaintiff also makes general statements about the public interest in "uncovering ... corruption in a government agency."  (Pl.'s Reply Mem. at 5.)

Defendants contend that "it is apparent that the real interest to be furthered by the release [of the requested information] is MacLean's own personal interests in reversing his court-martial conviction."  (Def.'s Mot. Summ. J. I at 14.)  Plaintiff calls this statement "baseless" and asserts that his "efforts to uncover this government misconduct really will benefit only other service members and civilians who might be the target of illegal subpoenas." (Pl.'s Mem. Opp'n Defs.' Mots. Summ. J. at 8-9.)  In any event, such a motive would not constitute a "public interest."  *See Reporters Comm.*, 489 U.S. at 771 ("[W]hether an invasion of privacy is warranted cannot turn on the purposes for which the request for information is made.  Except for cases in which the objection to disclosure is based on a claim of privilege and the person requesting disclosure is the party protected by the privilege, the identity of the requesting party has no bearing on the merits of his or her FOIA request.); *NLRB. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978) ("[The] FOIA was not intended to function as a private discovery tool."); *Massey v. FBI*, 3 F.3d 620, 625 (2d Cir. 1993) ("[T]he mere possibility that information may aid an individual in the pursuit of litigation does not give rise to a public interest.") (citation omitted); *Brown v. FBI*, 658 F.2d 71, 75 (2d Cir. 1981) ("[I]n the weighing process ... it is the interest of the general public and not that of the private litigant that must be considered.").

"[W]hether disclosure of a private document under Exemption 7(C) is warranted must turn on the nature of the requested document and its relationship to the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny, rather than on the particular purpose for which the document is being requested." *Reporters Comm.*, 489 U.S. at 772; *see also id.* at 775 ("Congress ... expressed the core purpose of the FOIA as contributing significantly to public understanding *of the operations or activities of the government*.") (emphasis in original) (quotation omitted).  In other words, "[t]he public's

1   interest in disclosure of documents compiled during a law enforcement investigation derives

2   from FOIA's underlying purpose: to guarantee citizens' right to know what their government

3   is doing. This purpose is furthered by disclosure of information that sheds light on an agency's

4   performance of its duties. But, '[i]nformation that reveals little or nothing about an agency's

5   own conduct does not further the statutory purpose; thus the public has no cognizable interest

6   in the release of such information.'" *Mueller v. Dep't of Air Force*, 63 F. Supp. 2d 738, 743

7   (E.D. Va. 1999) (quoting *Beck v. Dep't of Justice*, 997 F.2d 1489, 1492 (D.C. Cir. 1993);

8   citing *Reporters Comm.*, 489 U.S. at 771)).

9          In *Hunt v. FBI*, 972 F.2d 286 (9th Cir. 1992), the Ninth Circuit faced a similar situation

10  as here when addressing the issue of whether Exemption 7(C) prohibited disclosure of records

11  related to the investigation of a FBI agent:

12             Hunt contends that there is significant public interest in the disclosure of the
               details of the FBI investigation. Disclosure of this file could reveal whether this
13             particular investigation was properly conducted, whether one FBI agent was
               guilty of wrongdoing, and whether discipline, if needed, was adequate and
14             properly imposed. The requested disclosure remains focused, however, on one
               isolated investigation, no longer of any interest to anyone other than the party
15             who instigated it. The FOIA is aimed at subjecting governmental activity to
               public scrutiny while protecting individual privacy. In evaluating the public
16             interest asserted we keep in mind that the FOIA's central purpose is to pierce the
               veil of administrative secrecy and to open agency action to the light of public
17             scrutiny. The single file sought by Hunt will not shed any light on whether all
               such FBI investigations are comprehensive or whether sexual misconduct by
18             agents is common.

19  *Id.* at 288-89 (quotation omitted); *see also Beck v. Dep't of Justice*, 997 F.2d 1489, 1493 (D.C.

20  Cir. 1993) ("The identity of one or two individual relatively low-level government wrongdoers,

21  released in isolation, does not provide information about the agency's own conduct.").

22         Here, Plaintiff seeks to learn about the conduct of two military agencies by looking at

23  six specific investigations in the 12 years between 1992 and 2004. According to the figures

24  presented by Defendants, there were approximately 50,000 courts-martial convened during that

25  time period. (Defs.' Br. Supp. Mot. Summ J. at 13.) Using the figures in a magazine article

26  submitted by Plaintiff, there would appear to have been substantially more. (Pl.'s Judicial

27  Notice Req. II, Ex. A at 3.) But regardless of the exact number, it is clear that, when placed

28  in context, information about six cases "does not provide information about the agency's own

conduct." *Beck*, 997 F.2d 1493.  Indeed, Plaintiff concedes as much in his briefing: "MacLean

is aware that the sampling of illegal subpoena cases he is attempting to investigate may not

produce results that will demonstrate a two-agency-wide pattern of behavior." (Pl.'s Reply Br.

at 6-7.)  In short, this "sampling" sought by Plaintiff "will not shed any light on whether all

such ... investigations are comprehensive or whether ... misconduct by [military prosecutors]

is common." *Hunt*, 972 F.2d at 289.

Therefore, there is no public interest in the requested information's disclosure.[8] *See*

*Beck*, 997 F.2d at 1493 ("[B]ecause there is nothing in such information that would in itself

shed light on the employer agency's actions, there is no public interest in its release.").  As

*Beck* states:

> In the usual case, we would first have identified the privacy interests at stake and
> then weighed them against the public interest in disclosure.  In this case,
> however, where we find that the request implicates no public interest at all, we
> need not linger over the balance; something ... outweighs nothing every time.
> There can be no dispute that there is 'something' on the private-interest side of
> the equation.  A government employee has at least some privacy interest in his
> own employment records, an interest that extends to not having it known
> whether those records contain or do not contain information on wrongdoing,
> whether that information is favorable or not.  In light of our finding today that
> there is no public interest in identifying whether these agents are wrongdoers,
> something outweighs nothing, and we find that the OPR did not violate FOIA
> in withholding the requested information.

*Id.* at 1494 (quotations and citations omitted).  Similarly, here there is no need to linger over

the balance: "something outweighs nothing every time."

But even if the Court were to find that balancing was necessary, there are factors

present here which diminish any public interest the requested information might otherwise

advance.  For instance, "[t]he work responsibilities of the agent under investigation ... will

affect the public interest in disclosure." *Id.*  Just as "lower level officials ... generally have a

stronger interest in personal privacy than do senior officials," *Dobronski v. FCC*, 17 F.3d 275,

---

[8]  While Plaintiff's requested information would not shed any light on the Army or Air
Force as a whole, it is worth remarking that Defendants *have* produced information which *does*
shed light on what the Army has done to prevent future occurrences of the issuance of
unauthorized subpoenas.  The Army's Legal Center and School now includes the topic of
compulsory process in its training courses for attorneys, and this issue also was addressed in
the Army's February 2006 "Trial Counsel Assistance Program" newsletter. (Quinn Decl. ¶ 11,
Exs. L, M.)  These and other training materials were provided to Plaintiff in response to a
separate FOIA request by Plaintiff. (Quinn Decl., Ex. F.)

280 (9th Cir. 1994), the public's interest in misconduct by a lower level official is weaker than its interest in misconduct by a senior official, *see Stern v. FBI*, 737 F.2d 84, 89 (D.C. Cir. 1984) ("[T]he level of responsibility held by a federal employee, as well as the activity for which such an employee has been censured, are appropriate considerations for determining the extent of the public's interest in knowing the identity of that censured employee.") (citation omitted).  In *Hunt*, the Ninth Circuit quoted the following passage from *Stern*:

> The public has a great interest in being enlightened about [] malfeasance by this senior FBI official--an action called 'intolerable' by the FBI--an interest that is not outweighed by his own interest in personal privacy. There is a decided difference between knowing participation by a high-level officer in such deception and the negligent performance of particular duties by the two other lower-level employees.

*Hunt*, 972 F.2d at 289 (quoting *Stern*, 737 F.2d at 94)).  The *Hunt* court then remarked that "[t]he individual targeted for investigation in this case is a lower-level FBI agent assigned to represent the FBI's interest in a single case.  She had no supervisory authority with respect to other agents, and no special responsibilities normally reserved for senior officials."  *Id.*  In *Hunt*, the agent's status as a "lower-level FBI agent" was one of the "key factors militat[ing] strongly against disclosure" of the requested information.  *Id.* at 290.  Similarly, as set out above, the officials responsible for issuing the subpoenas in the six requested cases were "junior officials serving in a position which is typically one of the first jobs in which a junior judge advocate serves."  (Sheeran Decl. II ¶ 7; *see also* Peterson Decl. I ¶ 18.)

Additionally, where there has been "negligent performance of particular duties" by the official, as opposed to "deliberate" and "intolerable" "malfeasance," the public's interest is diminished.  *See Stern*, 737 F.2d at 87, 94.  Here, in each of the six cases requested by Plaintiff, there was subsequent litigation which, to some degree, touched upon the propriety of the subpoenas at issue.  In each of the cases, the official's conduct appears to have been closer to "negligence" than "intolerable malfeasance."  *See U.S. v. Wooten*, 34 M.J. 141, 148 (C.M.A. 1992) ("[T]rial counsel had some reason for believing that the subpoenas which he issued might be found lawful...."); *Russell v. Gen. Servs. Admin.*, 935 F. Supp. 1142, 1145 (D. Colo. 1996) (finding that the Air Force was entitled to the financial information it obtained, and the information's disclosure did not violate the Privacy Act); *U.S. v. Lawson*, 1998 CCA LEXIS

- 20 -

283, at *5-*7 (A.F. Ct. Crim. App. 1998), *aff'd*, 1999 CAAF LEXIS 514 (C.A.A.F. 1999) ("[Appellant's] allegations have questionable factual support....  Moreover, contrary to appellant's argument, we fail to find that the agents have engaged in a 'systematic and pervasive' history of misconduct concerning searches or subpoenas for financial records.");[9] *U.S. v. Johnson*, 53 M.J. 459, 461 (C.A.A.F. 2000) ("The military judge was correct in ruling that an illegally ordered 'subpoena' was issued to secure the attendance of appellant's wife, Mrs. Johnson, as a witness at the Article 32 hearing.  He was also correct in finding that there was no prejudice to appellant's substantial rights by the improper production of this witness at the Article 32 hearing."); *Flowers v. First Hawaiian Bank*, 295 F. Supp. 2d 1130, 1140 (D. Haw. 2003) ("There simply is no evidence that any alleged damages could have been caused by [the] release of financial information [prior to the court-martial]."); *U.S. v. Williams*, 2004 CCA LEXIS 49, at *26 (A.F. Ct. Crim. App. 2004) ("We find no basis to conclude that this officer violated any 'legal norm or standard' such as would justify a conclusion of prosecutorial misconduct.").

In light of these factors, when weighing the privacy interests in exemption against the public interest in disclosure, the Court finds that the production of the requested information could reasonably be expected to constitute an unwarranted invasion of personal privacy.  *Cf. Kimberlin v. Dep't of Justice*, 139 F.3d 944, 949 (D.C. Cir. 1998) ("In view of the purpose of the FOIA, it will ordinarily be enough for the court to consider, when balancing the public interest in disclosure against the private interest in exemption, the rank of the public official involved and the seriousness of the misconduct alleged.  Here the [Office of Professional Responsibility ('OPR')] has investigated a staff-level government lawyer in connection with

---

[9]  The "allegations" with "questionable support" in *Lawson* were as follows: The appellant avers that Captain B, a judge advocate, prepared a subpoena under the caption 'United States v. Lawson,' as if it were before the U.S. District Court for the District of Maryland, which she alleges, was a false official statement. The appellant asserts that Captain B used a subpoena duces tecum to obtain discovery-type evidence.  Finally, the appellant complains that Captain B suborned the perjury of the Air Force Office of Special Investigations special agent by preparing an affidavit for his signature which contained false information.
*Lawson*, 1998 CCA LEXIS 283, at *5.

1   the possibly unauthorized and perhaps illegal release of information to the press.  Under these

2   circumstances, we have no doubt that disclosure of the OPR investigative file would occasion

3   an invasion of [the lawyer]'s privacy disproportionate to, and therefore 'unwarranted' by, such

4   insight as the public would gain into what the Government is up to.") (quotation and citation

5   omitted); *Mueller v. Dep't of Air Force*, 63 F. Supp. 2d 738, 743-44 (E.D. Va. 1999) (holding

6   that documents related to an internal investigation into allegations of misconduct by an Air

7   Force prosecutor were exempted from disclosure by § 552(b)(7)(C)).

8            In sum, even construing Exemption 7 narrowly, the Court finds: the requested

9   information was compiled for law enforcement purposes; there exists privacy interests in the

10   materials requested by Plaintiff; when placed in context, the requested information does not

11   shed any light on the agency's conduct, such that there is any public interest in the

12   information's disclosure; and, even if there is some public interest, disclosure of the requested

13   information could reasonably be expected to constitute an unwarranted invasion of personal

14   privacy.  Therefore, the information requested by Plaintiff is exempt from FOIA disclosure

15   pursuant to 5 U.S.C. § 552(b)(7)(C).

16            **2.      Exemption 6**

17            Alternatively, Defendants contend that the requested information is exempt from

18   disclosure pursuant to 5 U.S.C. § 552(b)(6).  Exemption 6 exempts from disclosure "personnel

19   and medical files and similar files the disclosure of which would constitute a clearly

20   unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).

21            The threshold inquiry is whether the requested information constitutes "personnel and

22   medical files and similar files."  *See Church of Scientology of Cal. v. Dep't of Army*, 611 F.2d

23   738, 746-47 (9th Cir. 1979).  "A 'similar' file is defined simply as a file which contains

24   information similar to that found in a standard personnel file."  *Id.* at 746 (citing *Pacific*

25   *Molasses Co., Inc. v. NLRB*, 577 F.2d 1172 (5th Cir. 1978) (information contained on union

26   preference cards signed by employees found to be of a sufficiently 'personal' nature to qualify

27   the cards as 'similar' files); *Rural Housing Alliance v. U.S.*, 498 F.2d 73 (D.C. Cir. 1974)

28   (government report on housing discrimination found to qualify as a 'similar file' because of

information concerning marital status, legitimacy of children, medical condition, etc. of individual homeowners)).  The phrase, "similar files," is to be given a broad meaning, and it may apply even if the files at issue "are likely to contain much information about a particular individual that is not intimate."  *Dep't of State v. Washington Post Co.*, 456 U.S. 595, 598-600 (1982) (reversing court of appeals rule "that the phrase 'similar files' applies only to those records which contain information of the same magnitude--as highly personal or as intimate in nature--as that at stake in personnel and medical records," and instead holding that "the phrase 'similar files' was to have a broad, rather than narrow, meaning").  "In sum, we do not think that Congress meant to limit Exemption 6 to a narrow class of files containing only a discrete kind of personal information.  Rather, the exemption was intended to cover detailed Government records on an individual which can be identified as applying to that individual."  *Id.* at 602 (quotation omitted).  Finally, in *Department of the Air Force v. Rose*, 425 U.S. 352 (1976), the Supreme Court addressed the issue of whether case summaries of honor and ethics hearings at the Air Force Academy were exempt from disclosure under Exemption 6:

> Two attributes of the case summaries require that they be characterized as 'similar files.'  First, they relate to the discipline of cadet personnel....  Second, and most significantly, the disclosure of these summaries implicates similar privacy values [as 'personnel files']; for ... identification of disciplined cadets a possible consequence of even anonymous disclosure could expose the formerly accused men to lifelong embarrassment, perhaps disgrace, as well as practical disabilities, such as loss of employment or friends.

*Id.* at 376-77 (quotation omitted).

Here, Plaintiff has requested records concerning "professional responsibility investigations into" those "who issued the illegal subpoenas to civilians"; "misconduct investigations" into those "who issued the illegal subpoenas to civilians"; "ethics investigations into" those "who issued the illegal subpoenas to civilians"; and "formal and/or informal disciplinary action taken against" those "who issued the illegal subpoenas to civilians." (Quinn Decl., Ex. A; Espinal Decl., Ex. A.)  In short, the requested information "can be identified as applying to a particular individual," and also relates to investigations of alleged misconduct the disclosure of which could subject the prosecutor to embarrassment and perhaps harassment and disgrace. (*See* Quinn Decl. ¶¶ 7-8, 12, Ex. K at 4-5; Peterson Decl. I ¶¶ 13-14,

Exs. C-F; McGowan Decl. ¶¶ 2-3.)  As such, the requested files qualify as "similar files."

Therefore, the requested records are the type eligible for nondisclosure under § 552(b)(6) if, after balancing the implicated privacy interests against the public interest in disclosure, disclosure would "constitute a clearly unwarranted invasion of personal privacy." "The protection available under each exemption [i.e., Exemption 6 and Exemption 7(C)] is not co-extensive." *Hunt v. FBI*, 972 F.2d 286, 288 (9th Cir. 1992).  As the Supreme Court has explained:

> [W]hereas Exemption 6 refers to disclosures that 'would constitute' an invasion of privacy, Exemption 7(C) encompasses any disclosure that 'could reasonably be expected to constitute' such an invasion.... Thus, the standard for evaluating a threatened invasion of privacy interests resulting from the disclosure of records compiled for law enforcement purposes is somewhat broader than the standard applicable to personnel, medical, and similar files.

*Reporters Comm.*, 489 U.S. at 756.

"To determine whether an invasion of privacy is clearly unwarranted, the court balances four factors: (1) the plaintiff's interest in disclosure; (2) the public interest in the disclosure; (3) the degree of the invasion of personal privacy; and (4) the availability of any alternate means of obtaining the requested information." *Dobronski v. FCC*, 17 F.3d 275, 278 (9th Cir. 1994) (citations omitted).

Here, Plaintiff expressly disclaims any personal interest in the disclosure of the requested information: "Although *Mr. MacLean will not reap any personal benefit from disclosure of the requested documents*, he will help protect the rights of servicepersons and civilians who might be targeted by or served with illegal subpoenas."  (Pl.'s Mem. Opp'n Defs.' Mot. Summ. J. at 8 (emphasis added) (citing MacLean Decl. ¶ 7).)[10]

The Court has already addressed the second ("public interest") and third ("personal privacy") factors in its discussion of Exemption 7(C), *supra*.

The final factor, "the availability of any alternate means of obtaining the requested

---

[10] Plaintiff has requested the Court to take judicial notice of an article published in 2003 in the Navy Times, which states that Plaintiff "is arming himself with evidence of illegal subpoenas ... to try and reverse [his court-martial] conviction."  (Pl.'s Req. Judicial Notice II, Ex. B at 1.)  As noted above, even if this is Plaintiff's purpose for requesting the information, it is irrelevant to the Court's decision.  *See NLRB. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978) ("[The] FOIA was not intended to function as a private discovery tool.").

information," favors disclosure.  Defendants have not advanced any alternative means by which Plaintiff could obtain information related to what actions the Army and Air Force took to investigate and discipline the individuals who issued the unauthorized subpoenas.[11]

However, the Ninth Circuit has held that this fourth factor is not dispositive.  For instance, in *Minnis v. Department of Agriculture*, 737 F.2d 784 (9th Cir. 1984), the court held that the names and addresses of applicants for permits to travel on a river were properly withheld under Exemption 6 despite the plaintiff's commercial interest in the information and his lack of alternative means to obtain the information.  *See id.* at 786-88; *see also Multnomah County Med. Soc'y v. Scott*, 825 F.2d 1410, 1416 (9th Cir. 1987) ("The parties agree that there are no alternative means of obtaining the requested information.  This factor is not dispositive, however.") (holding that Exemption 6 barred disclosure of the requested information).  The *Minnis* court emphasized that the asserted public benefit of allowing outside scrutiny of the permit lottery's fairness would not be furthered by the requested information: "[Plaintiff] also would need other information, including the size of the parties, the types of craft, and the dates requested.  Minnis has not asked the Forest Service for this information....  Thus, we must conclude that there is little or no public interest served by disclosure of the information sought."  *Minnis*, 737 F.2d at 787.

Similarly, here, as discussed *supra*, Plaintiff's asserted public interests would not be furthered by disclosure of the requested information because it "does not provide information about the agency's own conduct," *Beck*, 997 F.2d 1493, and more specifically, "will not shed any light on whether all such ... investigations are comprehensive or whether ... misconduct by [prosecutors] is common," *Hunt*, 972 F.2d at 289.  Plaintiff states that he "is aware that the sampling of illegal subpoena cases he is attempting to investigate may not produce results that will demonstrate a two-agency-wide pattern of behavior."  (Pl.'s Reply Br. at 6-7.)  However, he asserts that he should be "free to pursue these matters incrementally as his time and

---

[11]   However, as discussed *supra*, information that (a) unauthorized subpoenas were issued in the six requested cases, and (b) the training measures implemented by the Army to prevent future issuances of unauthorized subpoenas, are available through alternate means (Quinn Decl. ¶ 11, Exs. F, L, M).

resources allow." (Pl.'s Reply Br. at 7.) *Minnis*, however, does not authorize an "incremental" approach; the requested information must support the assert public interest without the need of any additional information. *See Minnis*, 737 F.2d at 787 ("Minnis is on stronger ground in arguing that there is a public benefit in allowing outside scrutiny of the permit lottery's fairness. The difficulty is ... that the information Minnis seeks would not further such an objective. The Forest Service submitted an uncontradicted affidavit that disclosure of names and addresses alone would not enable Minnis to assess the fairness of the lottery; he also would need other information, including the size of the parties, the types of craft, and the dates requested. Minnis has not asked the Forest Service for this information.").

Even with respect to the balancing required by Exemption 6--which is less protective of privacy than Exemption 7(C)--the failure to show that the requested information will further a public interest is fatal to a FOIA claim where, as here, privacy interests have been shown. *See Beck v. Dep't of Justice*, 997 F.2d 1489, 1494 (D.C. Cir. 1993) ("In light of our finding today that there is no public interest in identifying whether these agents are wrongdoers, something outweighs nothing, and we find that the [Office of Professional Responsibility] did not violate FOIA in withholding the requested information.") (noting that this holding applies "[u]nder either Exemption 6 or Exemption 7(C)"); *see also Mueller v. Dep't of Air Force*, 63 F. Supp. 2d 738, 744-45 (E.D. Va. 1999) (holding that documents related to an internal investigation into allegations of misconduct by an Air Force prosecutor were exempted from disclosure by § 552(b)(6)).

Therefore, the Court finds that Defendants have shown that the requested information was properly withheld pursuant to Exemption 6.

### 3.    Glomar Response

"[A] government agency may issue a 'Glomar Response,' that is, refuse to confirm or deny the existence of certain records, if the FOIA exemption would itself preclude the acknowledgment of such documents." *Minier v. CIA*, 88 F.3d 796, 800 (9th Cir. 1996) (citing *Hunt v. CIA*, 981 F.2d 1116, 1118 (9th Cir. 1992)). According to Army regulations, a Glomar response is appropriate "when the fact of the existence or nonexistence of a responsive record

1   would itself reveal personally private information, and the public interest in disclosure is not

2   sufficient to outweigh the privacy interest." 32 C.F.R. §§ 518.13(f)(2)(iv) & 518.13(g)(1)(iv).

3        Here, as set out *supra*, Defendants have adequately shown that Plaintiff's requests are,

4   in essence, "by name" requests of the individuals involved in the issuance of the subpoenas.

5   In other words, given the specificity of Plaintiff's relatively small number of requests (each

6   involving different locations and time periods), and in light of Defendants' proffered evidence,

7   the Court finds that redaction would be "a pointless exercise." *Hunt v. FBI*, 972 F.2d 286, 288

8   (9th Cir. 1992) ("Because Hunt's FOIA request sought access to a single file that contained

9   information about one particular agent, disclosure of any material contents of this file, coupled

10  with the public availability of Hunt's FOIA request naming the agent, would make redaction

11  of the file a pointless exercise.").

12       This situation may be contrasted with that in *Department of the Air Force v. Rose*, 425

13  U.S. 352 (1976), wherein the Supreme Court held that "case summaries" of honor and ethics

14  hearings at the Air Force Academy were not exempt from disclosure under Exemption 6,

15  because the summaries would have "personal references or other identifying information

16  deleted." *Id.* at 380. Given the large number of cadets at the Academy during the requested

17  time period, redaction likely would have been sufficient to safeguard privacy. But nonetheless,

18  the Court instructed that on remand: "[I]f in [the district court's] opinion deletion of personal

19  references and other identifying information is not sufficient to safeguard privacy, then the

20  summaries should not be disclosed." *Id.* at 381 (quotation omitted). This case, unlike *Rose*,

21  involves a small group of cases, each involving very different time periods, locations and

22  circumstances, thus multiplying the ways in which the subject of the investigation could be

23  identified and effectively rendering useless the tool of redaction. Here, in short, the "deletion

24  of personal references and other identifying information is not sufficient to safeguard privacy."

25  *Id.*; *cf. Hunt*, 972 F.2d at 289 ("Hunt has requested one investigative file, focused completely

26  on the conduct of one agent. The file cannot be redacted and disclosed without the risk of

27  subjecting that agent to undeserved embarrassment and attention.").

28       The Court's determination of the futility of redaction is not altered by the Air Force's

eventual release of 77 pages of documents responsive to Plaintiff's request. As Plaintiff correctly states, these documents are "so heavily redacted that no information was provided." (Pl.'s Mem. Opp'n Defs.' Mot. Summ. J. at 1.) Moreover, "[n]owhere in the FOIA is there a requirement that an agency release records simply because another agency that may possess similar records has done so." *Grove v. Dep't of Justice*, 802 F. Supp. 506, 514 (D.D.C. 1992) ("[T]he FBI's release of criminal information has no bearing on whether the Navy should make the same decision."). In short, the Air Force's decision to release these documents does not alter the Court's determination of the propriety of the Army's Glomar response. In addition, the Air Force's decision to release the documents does not alter the Court's conclusion that the Air Force, no less than the Army, could have properly asserted a Glomar response at the outset.[12] *Cf. Cotton v. Adams*, 798 F. Supp. 22, 26 (D.D.C. 1992) ("*Although the better course would have been for the Government to refuse to confirm or to deny the existence of responsive materials*, ... the filing of a *Vaughn* index does not foreclose the Government's decision to withhold the documents in order to protect the release of the contents of these reports.") (emphasis added) (citation omitted). As one court has explained:

> Agency disclosure of a document requested under the FOIA does not logically give rise to an inference that the agency does not consider the document exempt from FOIA disclosure. The FOIA does not prohibit disclosure of documents covered by exemptions. The exemptions are only permissive and mark the outer limits of information that may be withheld where the agency makes a specific determination that the public interest and the specific circumstances presented dictate that the information should be withheld. It clearly would not be inconsistent with the FOIA for an agency to initially withhold an exempt document and later disclose it after determining that disclosure was in the public interest even though the document was exempt.

*Am. Commercial Barge Lines Co. v. N.L.R.B.*, 758 F.2d 1109, 1112 (6th Cir. 1985) (quotation and citations omitted).

Courts have affirmed Glomar responses to requests similar to Plaintiff's request here.

---

[12] However, once the Air Force issued its "no records" response to Plaintiff, it no longer was in a position to assert a Glomar response when responsive records were subsequently found. *Cf.* 32 C.F.R. §§ 518.13(f)(2)(v) & 518.13(g)(1)(v) ("A 'refusal to confirm or deny' response must be used consistently, not only when a record exists, but also when a record does not exist. Otherwise, the pattern of using a 'no records' response when a record does not exist and a 'refusal to confirm or deny' when a record does exist will itself disclose personally private information.").

*See Beck v. Dep't of Justice*, 997 F.2d 1489 (D.C. Cir. 1993) (upholding agency's Glomar response to FOIA request seeking, *inter alia*, Office of Professional Responsibility records pertaining to two DEA special agents); *Dunkelberger v. Dep't of Justice*, 906 F.2d 779 (D.C. Cir. 1990) (upholding agency's Glomar response to FOIA request seeking records of FBI agent who was allegedly suspended for misconduct in connection with an investigation into a prominent state official); *Nation Magazine v. U.S. Customs Serv.*, 937 F. Supp. 39, 45 (D.D.C. 1996) ("Customs' more narrowly tailored Glomar response is appropriate pursuant to Exemption 7(C), as the interests implicated by disclosure of whether Mr. Perot was a subject, witness, or informant in a law enforcement investigation tip the scales in favor of nondisclosure."). Similarly, in this case, the Court finds that the Army's Glomar response was proper.

### 4.     Adequacy of the Search

A requester may challenge an agency's response to a FOIA request in two ways: first, as discussed above, the requester may challenge whether an agency's claimed exemption applies to the requested records, *see, e.g.*, *Favish*, 541 U.S. at 160-64; and second, the requester may challenge the sufficiency of an agency's search of its records in response to a FOIA request, *see, e.g.*, *Zemansky v. Envtl. Prot. Agency*, 767 F.2d 569, 571 (9th Cir. 1985) (requester claiming that agency search was "deficient"). Here, Plaintiff only makes a passing reference to the adequacy of the Defendants' search. (Pl.'s Mem. Opp'n Mot. Summ. J. at 12 n.8.) Because the Army asserted a Glomar response--which by its nature precludes an acknowledgment of the results of any search--the Court will focus on the adequacy of the Air Force's search.

The agency carries the burden of demonstrating that "it has conducted a search reasonably calculated to uncover all relevant documents." *Zemansky*, 767 F.2d at 571 (quotation omitted). "In demonstrating the adequacy of the search, the agency may rely upon reasonably detailed, nonconclusory affidavits submitted in good faith." *Id.* (quotation omitted) (finding agency search adequate based on "relatively detailed" affidavits).

Plaintiff argues that the Air Force's "moving target" response is evidence of bad faith,

and therefore the Court should disregard the usual presumption of good faith accorded agency affidavits and actions. (Pl.'s Reply Mem. at 8; Pl.'s Opp'n Defs.' Mot. Summ. J. at 24.) Based upon the Air Force's detailed explanation of its responses to the FOIA request, the Court finds that the Air Force has not exhibited bad faith. (*See* Espinal Decl.¶¶ 5-7; Peterson Decl. I ¶¶ 5-9; Peterson Decl. II ¶¶ 5-9; McGowan Decl. ¶¶ 3-5; Hodges Decl.; Johnson Decl.; Costa Decl.) Specifically, the Air Force's original searches were performed using a subject-matter index that catalogued investigations since 1997. (Espinal Decl.¶ 7; McGowan Decl. ¶ 3.) Only after the Air Force identified the dates of the courts-martial referenced by Plaintiff did the Air Force conduct a by-hand search of files prior to 1997, when some of the referenced courts-martial occurred. (Espinal Decl.¶ 7; McGowan Decl. ¶ 4; Peterson Decl. I ¶¶ 6-9.) At this point, the 77 pages of documents were located, redacted, and produced. (Espinal Decl.¶ 7; Peterson Decl. I ¶ 9.) Based upon these affidavits, the Court finds that the Air Force's multiple searches, when considered together, were "reasonably calculated to uncover all relevant documents." *Zemansky*, 767 F.2d at 571 (quotation omitted). Therefore, the Air Force has satisfied its obligation under the FOIA.

## V.     Conclusion

For the reasons discussed above, the Court rules as follows: (a) Defendants' Motions for Summary Judgment (Docs. # 27, 36) are **GRANTED**; (b) Plaintiff's Motion for Summary Judgment (Doc. # 45) is **DENIED**; (c) the Joint Motion to Dismiss Defendants U.S. Department of Defense and Francis J. Harvey, Secretary of the Army (Doc. # 54) is **GRANTED**. The Clerk of the Court shall enter Judgment in favor of Defendants and against Plaintiff.

**IT IS SO ORDERED**.

DATED: March 6, 2007

**WILLIAM Q. HAYES**
United States District Judge